IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JERRY CHARLES HOLLE,
*Appellant*.

No. 2 CA-CR 2014-0268
Filed September 16, 2015

---

Appeal from the Superior Court in Pima County
No. CR20131185001
The Honorable Richard D. Nichols, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Erin K. Sutherland, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Howard and Judge Kelly[1] concurred.

V Á S Q U E Z, Presiding Judge:

¶1  After a jury trial, Jerry Holle was convicted of molestation of a child and sexual abuse of a minor under the age of fifteen.  The trial court sentenced him to a ten-year term of imprisonment for molestation, followed by a five-year term of probation for sexual abuse.  On appeal, Holle argues the court erred when it instructed the jury that "lack of sexual motivation [is] an affirmative defense to be proven by the defendant."  In the alternative, he argues "the legislature has overstepped its constitutional authority" by redefining sexual interest as an affirmative defense.  For the following reasons, we affirm.

### Factual and Procedural Background

¶2  We view the facts in the light most favorable to sustaining Holle's convictions.  *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008).  In February 2013, M.H. disclosed to a friend and school counselor that her grandfather, Holle, had touched her breasts, buttocks, and vagina on several occasions.  After an investigation, a grand jury indicted Holle for molestation of a child, sexual abuse of a minor under fifteen, sexual conduct with a minor under fifteen, and aggravated assault of a minor under fifteen.  The state alleged the first three charges were dangerous crimes against children (DCAC) and the fourth offense was committed for the purpose of sexual gratification.

¶3  Before trial, Holle filed an "objection to [the] statutory elements of the offense," arguing the statutes for molestation and

---

[1]The Hon. Virginia C. Kelly, a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and our supreme court.

sexual abuse "exclude[] the central element defining *mens rea* . . . [,] sexual interest, and shift[] the burden to the defendant to prove lack of sexual interest in violation of the Due Process Clause of the Fifth and Fourteenth Amendments." Based on that argument, he requested a jury instruction stating, "The State must prove beyond a reasonable doubt that the defendant was sexually motivated to commit" the offenses. The trial court denied the request.

**¶4** At the close of the state's case at trial, Holle moved for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., on all counts. The court granted the motion only as to aggravated assault. In his defense on the remaining charges, Holle presented the testimony of his daughters and M.H.'s uncle, all of whom stated they had no reason to believe Holle was sexually interested in M.H. or other children. The court instructed the jury regarding Holle's defense as follows:

> It is a defense to sexual abuse and molestation of a child if the defendant was not motivated by a sexual interest.
>
> . . . The burden of proving each element of the offenses beyond a reasonable doubt always remains on the State. However, the burden of proving the affirmative defense of sexual abuse and molestation of a child is on the defendant. The defendant must prove the affirmative defense of no sexual interest by a preponderance of the evidence. If you find that the defendant has proven the affirmative defense of no sexual interest by a preponderance of the evidence you must find the defendant not guilty of the offenses of sexual abuse and molestation of a child.

Despite this instruction, the jury submitted a question to the court shortly after deliberations began, asking, "For these accusations to

be a crime, must there be sexual intent proven[?]" The court referred the jury back to their original instructions.

¶5 The jury found Holle guilty of molestation and sexual abuse of a minor, both DCAC, but was unable to reach a verdict on the charge of sexual conduct with a minor. Upon the state's request, the trial court later dismissed the sexual-conduct charge with prejudice. The court sentenced Holle as described above. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Jury Instruction**

¶6 Holle argues "sexual interest is, and always has been, an element of the offense of Child Molestation" and therefore the trial court erred by instructing the jury that he had the burden to prove his lack of sexual interest. We review de novo whether a jury instruction accurately stated the law. *State v. Paredes-Solano*, 223 Ariz. 284, ¶ 24, 222 P.3d 900, 908 (App. 2009). "[T]he test is whether the instructions [as a whole] adequately set forth the law applicable to the case." *State v. Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d 1006, 1009-10 (1998).

¶7 The issue presented here primarily involves the interpretation of A.R.S. §§ 13-1404 and 13-1410. Our goal in interpreting statutes is to "give effect to the legislature's intent." *State v. Hinden*, 224 Ariz. 508, ¶ 9, 233 P.3d 621, 623 (App. 2010). "[W]e look first to the plain language of the statute as the most reliable indicator of its meaning." *State v. Givens*, 206 Ariz. 186, ¶ 5, 76 P.3d 457, 459 (App. 2003). If the plain language of the statute is clear, unambiguous, and susceptible to only one reasonable interpretation, "we need look no further to ascertain the legislative intent" and will apply the language as written. *State v. Peek*, 219 Ariz. 182, ¶ 11, 195 P.3d 641, 643 (2008); *State v. Gomez*, 212 Ariz. 55, ¶ 11, 127 P.3d 873, 875 (2006). If the statute's language is ambiguous, however, we must turn to other tools of statutory interpretation. *State v. Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d 1261, 1264 (App. 2007).

**Plain-Meaning Rule**

¶8        To determine whether a statute is unambiguous and susceptible to only one reasonable interpretation, we must give words their plain, ordinary, or "'commonly accepted meaning[]'" unless a statutory term is defined, in which case we apply that meaning. *State v. Bon*, 236 Ariz. 249, ¶ 6, 338 P.3d 989, 991 (App. 2014), *quoting State v. Petrak*, 198 Ariz. 260, ¶ 10, 8 P.3d 1174, 1178 (App. 2000). This general rule has a critical purpose in the criminal-law context—our criminal statutes must warn the public "of the nature of the conduct proscribed" by our legislature. A.R.S. § 13-101(2); *see also* A.R.S. §§ 1-211(C) ("Penal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice."), 13-101(3) (criminal statutes "define the act or omission and the accompanying mental state which constitute each offense and limit the condemnation of conduct as criminal when it does not fall within the purposes set forth"). Thus, in determining whether a statute fulfills this purpose, we consider how "'a person of ordinary or average intelligence'" would interpret the statute's language. *State v. Getz*, 189 Ariz. 561, 565, 944 P.2d 503, 507 (1997), *quoting Barbone v. Superior Court*, 11 Ariz. App. 152, 154, 462 P.2d 845, 847 (1969).

¶9        With these principles in mind, we turn to §§ 13-1404(A) and 13-1410(A). A defendant commits child molestation by "intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age." § 13-1410(A). Similarly, a defendant commits sexual abuse by "intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years of age if the sexual contact involves only the female breast." § 13-1404(A). And, the term "sexual contact" is defined as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." A.R.S. § 13-1401(A)(3).

¶10        In *State v. Simpson*, another department of this court concluded the language in the molestation statute was "clear and unambiguous." 217 Ariz. 326, ¶ 18, 173 P.3d 1027, 1029 (App. 2007).

The court noted that the statute, § 13-1410, does not refer to "sexual interest" under A.R.S. § 13-1407(E), which provides: "It is a defense to a prosecution [for sexual abuse] or [molestation] that the defendant was not motivated by a sexual interest." *Id.* Therefore, the court determined "[t]he 'sexual interest' provision of § 13-1407(E) is not an element of the offense." *Id.* ¶ 19.

¶11 Although *Simpson* provides one reasonable interpretation of § 13-1410(A), to the extent it concludes this is the only reasonable interpretation, we respectfully disagree. *See State v. Patterson*, 222 Ariz. 574, ¶ 19, 218 P.3d 1031, 1037 (App. 2009) (decisions of coordinate courts are "'persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles'"), *quoting Scappaticci v. Sw. Sav. & Loan Ass'n*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983); *cf. Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, ¶ 34, 322 P.3d 139, 146 (2014) (Bales, J., dissenting) ("When . . . a statute may reasonably be interpreted more than one way, determining its meaning is not advanced by assertions that one plausible interpretation must be right because it reflects the 'plain meaning.'"). A person of ordinary or average intelligence would infer a fundamental connection exists between sexual interest and the type of contact prohibited under §§ 13-1404(A) and 13-1410(A)—"molestation," "sexual abuse," "sexual contact," "touching," "fondling," and "manipulating." *See also* § 13-1401(A)(3). We agree with Holle that contact motivated by sexual interest is precisely what distinguishes innocent and criminal conduct under these statutes. *See Getz*, 189 Ariz. at 565, 944 P.2d at 507. We thus conclude the statutes are susceptible to more than one reasonable interpretation, including the one advanced by Holle.

¶12 Our supreme court reached the same conclusion when addressing similar language in *State v. Berry*, 101 Ariz. 310, 313, 419 P.2d 337, 340 (1966). *See also United States v. Hester*, 719 F.2d 1041, 1043-44 (9th Cir. 1983) (noting "'a rational connection'" between "[t]he acts of touching, fondling, or playing with the private parts of a child" and "sexual interest"), *quoting Leary v. United States*, 395 U.S. 6, 33 (1969); *State ex rel. Hamilton v. Superior Court*, 128 Ariz. 184, 187, 624 P.2d 862, 865 (1981) (suggesting former sexual-contact statute refers to conduct "of a sexual nature"). Notably, the jury in this case

made this rational connection. As we noted above, during its deliberations, the jury sent the following question to the court: "For these accusations to be a crime, must there be sexual intent proven[?]" During a discussion between the court and counsel, the prosecutor stated "I'm not sure that the instructions said [sexual interest is] not an element of the offense. And that may be why they're getting hung up." When the court noted that "[t]he instructions clearly don't list that as an element," the prosecutor responded that lawyers might understand sexual interest is not an element of the offense, but "I just am not sure the lay people understand that."

**Statutory History**

**¶13** Because we conclude §§ 13-1404 and 13-1410 are susceptible to more than one reasonable interpretation, we look beyond the statutes' language to determine their meaning. *See Peek*, 219 Ariz. 182, ¶ 11, 195 P.3d at 643; *Gomez*, 212 Ariz. 55, ¶ 11, 127 P.3d at 875. We consider "'the statutory scheme as a whole and consider [each] statute's context, subject matter, historical background, effects and consequences, and spirit and purpose'" to determine the legislature's intent. *Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d at 1264, *quoting Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002).

**¶14** In 1939, our legislature enacted a statute making it a crime to "annoy[] or molest[] a school child." 1939 Ariz. Sess. Laws, ch. 13, § 1. In 1965, the legislature enacted a new molestation statute, which provided:

> A person who molests a child under
> the age of fifteen years by fondling, playing
> with, or touching the private parts of such
> child or who causes a child under the age
> of fifteen years to fondle, play with, or
> touch the private parts of such person shall
> be guilty of a felony . . . .

1965 Ariz. Sess. Laws, ch. 20, § 3.

7

¶15        In *Berry*, 101 Ariz. at 312, 419 P.2d at 339, our supreme court considered whether this statutory language was unconstitutionally vague or "inexplicit."  The court suggested the statute's use of the word "molests" to describe the proscribed contact was ambiguous on its face.  *Id.*  But, applying principles of statutory interpretation, the court concluded the statute was constitutional.  *Id.*  It first identified the legislature's purpose in enacting such a criminal statute:  "the protection of the young from improper advances."  *Id.*  Next, the court observed that the statute specified several "easily recognized acts which combined with a necessary intent constitute a violation."  *Id.* at 313, 419 P.2d at 340.  Although finding the "statute fail[ed] to expressly state a necessary element of intent or scienter," the court determined:  "'When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender.'"  *Id.*, *quoting State v. Trenary*, 79 Ariz. 351, 354, 290 P.2d 250, 252 (1955).  The court reasoned that, because this implied element of intent narrowed the scope of conduct punishable under the statute, it was not impermissibly vague or overbroad.  *Id.*

¶16        In 1977, the legislature enacted the sexual-abuse and sexual-contact statutes, using language that substantially mirrors the language in the current statutes.[2]  1977 Ariz. Sess. Laws, ch. 142, § 63.  At that time, however, sexual abuse of a child under fifteen years of age was not limited to "sexual contact involv[ing] only the female breast."  § 13-1404(A); *see* 1977 Ariz. Sess. Laws, ch. 142, § 63.  Therefore, despite some differences, the sexual-abuse statute applied to the same conduct prohibited by the molestation statute.  *See State v. Aguirre*, 130 Ariz. 54, 58, 633 P.2d 1047, 1051 (App. 1981) ("These two offenses are virtually identical as they apply to a victim less than 15 years old.").  *Compare* 1977 Ariz. Sess. Laws, ch. 142, § 63

---

[2]Former § 13-1401(2) defined "sexual contact" as "any direct or indirect fondling or manipulating of any part of the genitals, anus or female breast," and § 13-1404 prohibited "sexual abuse by intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years of age and who is not his or her spouse."  1977 Ariz. Sess. Laws, ch. 142, § 63.

(defining sexual contact under sexual-abuse statute as "direct or indirect fondling or manipulating of any part of the genitals, anus or female breast"), *with* 1965 Ariz. Sess. Laws, ch. 20, § 3 (describing molestation as "fondling, playing with, or touching the private parts"); *see also State v. Carter*, 123 Ariz. 524, 525, 601 P.2d 287, 288 (1979) (interpreting "private parts" as "limited to the genital and excretory organs and does not include the female breast").

¶17　　　　Also during this period, the legislature added the word "knowingly" to the molestation statute. 1978 Ariz. Sess. Laws, ch. 201, § 133. Because *Berry* relied on the absence of an element of scienter in the former statute, this amendment could be interpreted as negating our supreme court's reasoning that "'there is a connotation of abnormal sexual motivation on the part of the offender.'" *See Berry*, 101 Ariz. at 313, 419 P.2d at 340, *quoting Trenary*, 79 Ariz. at 354, 290 P.2d at 252. Nonetheless, our courts continued to treat sexual interest as an "essential element" of the offense. *State v. Brooks*, 120 Ariz. 458, 460, 586 P.2d 1270, 1272 (1978); *see State v. Madsen*, 137 Ariz. 16, 18, 667 P.2d 1342, 1344 (App. 1983); *State v. Anderson*, 128 Ariz. 91, 92, 623 P.2d 1247, 1248 (App. 1980).

¶18　　　　The legislature codified the term "sexual interest" when it enacted § 13-1407(E) in 1983. *See* 1983 Ariz. Sess. Laws, ch. 202, § 10. And, in 1985, the legislature brought the sexual-abuse and molestation statutes into accord with one another. First, it amended the sexual-abuse statute so that abuse of a child occurred when a person had "sexual contact involv[ing] only the female breast." 1985 Ariz. Sess. Laws, ch. 364, § 17. Second, the legislature amended § 13-1407(E) to provide that a lack of sexual interest is a defense to both sexual abuse and molestation.[3] 1985 Ariz. Sess. Laws, ch. 364, § 20.

¶19　　　　For practical purposes, however, the enactment of § 13-1407(E) did not significantly change the way courts treated sexual interest. At that time, "Arizona common law governed the allocation of the burden of proving" a justification defense, and "[a]

　　　　　　[3]In this amendment, the legislature also removed "fondling" and "playing with" from the molestation statute and added "direct[] or indirect[]" touching. 1985 Ariz. Sess. Laws, ch. 364, § 21.

criminal defendant who presented 'any evidence' [to support such a defense] triggered the State's obligation to prove beyond a reasonable doubt that the defendant's conduct was not justified." *State v. Farley*, 199 Ariz. 542, ¶ 7, 19 P.3d 1258, 1259-60 (App. 2001).[4] In *State v. Byrd*, in the context of a conviction for molestation of a child, the defendant argued the trial court's instruction, which mirrored the language of § 13-1407(E), constituted unconstitutional burden shifting. 160 Ariz. 282, 283, 772 P.2d 1135, 1136 (App. 1988). This court disagreed, however, concluding that the jury instructions as a whole correctly instructed the jury on the state's burden of proof while permitting the defendant to assert the statutory defense. *Id.*; *see also In re Maricopa Cnty. Juv. Action No. JV-121430*, 172 Ariz. 604, 606-07, 838 P.2d 1365, 1367-68 (App. 1992) ("logical correlation" to § 13-1407(E) "is that the intent necessary to commit . . . molestation is . . . that the actor be motivated by a 'sexual interest'"); *State v. Turrentine*, 152 Ariz. 61, 67, 730 P.2d 238, 244 (App. 1986) (sufficient evidence to support finding of sexual interest).

¶20　　　Similarly, in *In the Matter of Pima County Juvenile Action No. 74802-2*, our supreme court considered whether the sexual-abuse statute was unconstitutionally vague. 164 Ariz. 25, 28-30, 790 P.2d 723, 726-28 (1990), *abrogated by Getz*, 189 Ariz. at 563-65, 944 P.2d at 505-07. In its analysis, the court noted that "the legislature ha[d] carefully exempted from the statute physical contact . . . that is unmotivated by sexual interest," and the court ultimately concluded the statute was not unconstitutional. *Id.* at 28-29, 790 P.2d at 726-27. In other words, the court treated sexual interest as an element under the criminal statute, not a separate affirmative defense. *See id.*;

---

[4]*Farley* refers to "justification" instead of the more general term, "defense," which we use above. 199 Ariz. 542, ¶ 7, 19 P.3d at 1259-60. Although there are substantive differences between the different types of defenses today, *see* A.R.S. § 13-103(B), this distinction was not made at that time, *see, e.g.*, *Farley*, 199 Ariz. 542, ¶ 14, 19 P.3d at 1261; *State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 238, 836 P.2d 445, 451 (App. 1992) ("With regard to the justification defense, self-defense is a statutory affirmative defense in Arizona.").

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[V]agueness doctrine requires that a *penal statute define the criminal offense* with sufficient definiteness . . . .") (emphasis added).

¶21 Our courts continued to apply § 13-1407(E) in this manner, even after the legislature amended the molestation statute in 1993 to conform with the language used under the sexual-abuse statute.[5] *See* 1993 Ariz. Sess. Laws, ch. 255, § 29 ("A person commits molestation of a child by intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual contact with the female breast, with a child under fifteen years of age."); Senate Fact Sheet, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz. Feb. 5, 1993) (describing bill as making "a number of technical and conforming changes"); *State v. Lujan*, 192 Ariz. 448, 451, 967 P.2d 123, 126 (1998); *State v. Sanderson*, 182 Ariz. 534, 542, 898 P.2d 483, 491 (App. 1995). Notably, in *Sanderson*, another department of this court referred to § 13-1407(E) as "an affirmative defense regarding motive" and not an element of the offenses. 182 Ariz. at 542, 898 P.2d at 491. But, the court nevertheless approved of a jury instruction that stated, "the State must prove beyond a reasonable doubt that any defense raised by the defendant is not valid." *Id.*; *see State v. Duarte*, 165 Ariz. 230, 232, 798 P.2d 368, 370 (1990). It necessarily follows that, although *Sanderson* correctly identified § 13-1407(E) as a "defense" to molestation, the distinction between an element and a defense amounted to a change in the burden of production, not the burden of proof. *See Farley*, 199 Ariz. 542, ¶ 7, 19 P.3d at 1259-60.

¶22 For our purposes, the 1993 amendment represents the last significant change to §§ 13-1401(A)(3), 13-1404(A), 13-1407(E), or

---

[5]In the 1993 amendment, the legislature also amended the definition of "sexual contact," combining the various terms used by former molestation and sexual-abuse statutes to describe prohibited conduct, with the exception of the term "playing with." *See* 1993 Ariz. Sess. Laws, ch. 255, § 23 ("'Sexual contact' means any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast . . . .").

13-1410(A).[6]   And, none of the amendments discussed above signaled a departure from the first interpretation provided by our supreme court in *Berry*, which established the constitutionality of the statute that created the offense of molestation, *see Berry*, 101 Ariz. at 313, 419 P.2d at 340, much less any of the other case law referring to sexual interest in this context, *see Lujan*, 192 Ariz. 448, ¶ 7, 967 P.2d at 126; *Maricopa Cnty. No. JV-121430*, 172 Ariz. at 606-07, 838 P.2d at 1367-68; *see also State v. Pennington*, 149 Ariz. 167, 168, 717 P.2d 471, 472 (App. 1985) ("It is presumed the legislature is aware of existing case law when it passes a statute; and that it is aware of court decisions interpreting the language of the statute; and when it retains the language upon which those decisions are based, it approves the interpretations.") (citation omitted).  *But see Simpson*, 217 Ariz. 326, ¶ 22, 173 P.3d at 1030 (describing 1993 amendment as significant departure from previous language).  Nor do we believe the legislature intended by enacting § 13-1407(E) to significantly alter the elements of molestation under § 13-1410(A).  If it had, it would have done so in the text of the molestation statute itself. *Cf. Getz*, 189 Ariz. at 565, 944 P.2d at 507 ("If the legislature intended to implicitly raise the age [of consent] to eighteen by enacting [§] 13-1407(B), which we doubt, it can do so explicitly by amending [§] 13-1404.").  Thus, at that point in the evolution of the molestation and sexual-abuse statutes, sexual interest remained an implicit element of the offenses, and, if a defendant raised the defense under § 13-1407(E), the state was required to prove beyond a reasonable doubt that the conduct in question was sexually motivated. *See Duarte*, 165 Ariz. at 232, 798 P.2d at 370; *Sanderson*, 182 Ariz. at 542, 898 P.2d at 491.

**Burden Shifting**

¶23        In 1997, however, our legislature enacted A.R.S. §§ 13-103(B) and 13-205, which set aside the common law approach to

---

[6]The legislature has since changed the conditions under which a person can consent to sexual contact and made other technical amendments.  *See* 2015 Ariz. Sess. Laws, ch. 209, § 3; 2008 Ariz. Sess. Laws, ch. 301, §§ 57, 60; 2005 Ariz. Sess. Laws, ch. 185, § 4; 1999 Ariz. Sess. Laws, ch. 261, § 17.

defenses.  *See* 1997 Ariz. Sess. Laws, ch. 136, §§ 3, 4.  At that time, § 13-103(B) provided:

> For the purposes of this section, "affirmative defense" means a defense that is offered and that attempts to justify the criminal actions of the accused or another person for whose actions the accused may be deemed to be accountable.  Affirmative defense does not include any defense that either denies an element of the offense charged or denies responsibility, including alibi, misidentification or lack of intent.

1997 Ariz. Sess. Laws, ch. 136, § 3.  Section 13-205(A) further provided that "a defendant shall prove any affirmative defense raised by a preponderance of the evidence, including any justification defense under chapter 4 of this title."[7]  1997 Ariz. Sess. Laws, ch. 136, § 4.

**¶24**    The second sentence of § 13-103(B), which excludes any defense that "denies an element of the offense charged or denies responsibility, including . . . lack of intent," ensures that this shift in the burden of proof is constitutional.  *See Farley*, 199 Ariz. 542, ¶¶ 11-14, 19 P.3d at 1260-61.  "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."  *Patterson v. New York*, 432 U.S. 197, 210 (1977); *see State v. Portillo*, 182 Ariz. 592, 594, 898 P.2d 970, 972 (1995).  But, due process "does not require the state to disprove a defendant's affirmative defense unless the defense negates 'any facts of the crime which the State [must] prove.'"  *State v. Jeffrey*, 203 Ariz. 111, ¶¶ 7, 9, 50 P.3d 861, 863-64 (App. 2002), *quoting Patterson*, 432 U.S. at 207 (alteration in *Jeffrey*).

---

[7]The legislature has since amended §§ 13-103(B) and 13-205(A) to exclude justification defenses under chapter 4.  *See* 2006 Ariz. Sess. Laws, ch. 199, §§ 1, 2.

**¶25** In *Simpson*, the court relied on § 13-205(A) and *Sanderson*'s characterization of § 13-1407(E) as an "affirmative defense" to conclude the burden of proof must lie with the defendant. *See* 217 Ariz. 326, ¶ 19, 173 P.3d at 1030. But *Sanderson* was decided before the term "affirmative defense" took on the significance it has today under § 13-103(B).[8] *See* 1997 Ariz. Sess. Laws, ch. 136, §§ 3, 4. More importantly, however, sexual interest under § 13-1407(E) has always been treated as an "element," *Byrd*, 160 Ariz. at 283, 772 P.2d at 1136, an "exempt[ion]," *Pima Cnty. No. 74802-2*, 164 Ariz. at 29, 790 P.2d at 727, or, at a minimum, a defense that the state must nevertheless disprove beyond a reasonable doubt, *see Sanderson*, 182 Ariz. at 542, 898 P.2d at 491. Therefore, sexual interest appears to be the type of defense that "either denies an element of the offense charged or denies responsibility, including . . . lack of intent." § 13-103(B). To conclude otherwise would force defendants to negate a "fact[] of the crime which the State is to prove in order to convict.'" *Farley*, 199 Ariz. 542, ¶ 11, 19 P.3d at 1260, *quoting Patterson*, 432 U.S. at 207; *see also State v. Lockwood*, 222 Ariz. 551, ¶ 9, 218 P.3d 1008, 1011 (App. 2009) ("'[I]f possible, this court construes statutes to avoid rendering them unconstitutional' and 'to avoid unnecessary resolution of constitutional issues.'"), *quoting Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272-73, 872 P.2d 668, 676-77 (1994) (alteration in *Lockwood*).

**¶26** In sum, we hold that § 13-1407(E) is a defense but not an affirmative defense. *See* § 13-103(B); *Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d at 1264. If, during a prosecution for molestation of a child or sexual abuse of a minor under fifteen, a defendant satisfies the burden of production to raise the defense listed under § 13-1407(E), then the state must prove beyond a reasonable doubt that the defendant's conduct was motivated by a sexual interest. *See Duarte*,

---

[8]*Simpson* similarly notes that *Getz* refers to "[t]he affirmative defenses . . . set forth in . . . § 13-1407." 217 Ariz. 326, ¶ 17, 173 P.3d at 1029; *see Getz*, 189 Ariz. at 506, 944 P.2d at 564. However, the opinion in *Getz* was released less than a month after §§ 13-103(B) and 13-205 became effective, and, therefore, those statutes were not at issue in that case.

165 Ariz. at 232, 798 P.2d at 370. Accordingly, although the trial court properly instructed the jury pursuant to *Simpson*, 217 Ariz. 326, ¶ 19, 173 P.3d at 1030, *cf. Sell v. Gama*, 231 Ariz. 323, ¶ 31, 295 P.3d 421, 428 (2013) ("Trial courts are required to follow the decisions of a higher court . . . ."), it was legal error to place the burden of proof on Holle to prove his conduct was not motivated by a sexual interest. *See Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d at 1009-10; *Paredes-Solano*, 223 Ariz. 284, ¶ 24, 222 P.3d at 908.

**Harmless Error**

¶27 Holle argues that the erroneous instruction in this case amounts to structural error, and, therefore, prejudice is presumed, and we need not consider whether the error was harmless. Structural errors "are those which 'deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for guilt or innocence.'" *State v. Henderson*, 210 Ariz. 561, ¶ 12, 115 P.3d 601, 605 (2005), *quoting State v. Ring*, 204 Ariz. 534, ¶ 45, 65 P.3d 915, 933 (2003). In contrast, other errors that cannot be classified as structural are subject to a harmless error analysis when the defendant has timely objected below. "Error is harmless if the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict." *State v. Davolt*, 207 Ariz. 191, ¶ 39, 84 P.3d 456, 470 (2004).

¶28 Holle relies primarily on *Sullivan v. Louisiana*, 508 U.S. 275 (1993). There, the parties agreed the trial court had provided an erroneous reasonable-doubt instruction to the jury. *Id.* at 277. The issue, then, was whether such error was structural or subject to harmless-error review. *Id.* at 278-79. The Supreme Court concluded a harmless-error analysis in that case would be "illogic[al]." *Id.* at 280. It explained that, under harmless-error review, the court would need to consider "whether the guilty verdict actually rendered in this trial was surely unattributable to the [erroneous instruction]." *Id.* at 279 (emphasis omitted). But, because the erroneous reasonable-doubt instruction rendered the verdict defective as a whole, there was "no jury verdict within the meaning of the Sixth Amendment" to consider under harmless-error review. *Id.* at 280.

**¶29**       In *Neder v. United States*, however, the Supreme Court concluded that "the omission of an element [of a criminal offense in a jury instruction] is subject to harmless-error analysis" because the error "did not 'vitiat[e] all the jury's findings.'" 527 U.S. 1, 10-11 (1999), *quoting Sullivan*, 508 U.S. at 281 (alteration in *Neder*; emphasis omitted). Thus, the Court rejected the argument that, without a "'complete verdict' on every element of the offense," structural error must apply. *Id.* at 11 (emphasis omitted).

**¶30**       Because the error here amounts to an omission of an element, *Neder* is controlling, and we review for harmless error. *See State v. Dann*, 205 Ariz. 557, ¶ 18, 74 P.3d 231, 239 (2003) (erroneous jury instructions subject to harmless-error review); *State v. Yazzie*, 232 Ariz. 615, ¶¶ 10-12, 307 P.3d 1042, 1044-45 (App. 2013) (conducting harmless-error review after concluding "the court did not instruct jurors regarding an element of the offense that the State was required to prove beyond a reasonable doubt"). Under this standard of review, the state must show that no reasonable jury "could find that the element omitted from the jury instructions had not been established beyond a reasonable doubt." *State v. Lewis*, 236 Ariz. 336, ¶ 38, 340 P.3d 415, 424-25 (App. 2014). As our supreme court has explained:

> Following a thorough examination of the trial court record, [we] must determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not reflec[t] a denigration of the constitutional rights involved."

*Dann*, 205 Ariz. 557, ¶ 18, 74 P.3d at 239, *quoting Neder*, 527 U.S. at 19 (second alteration in *Neder*).

**¶31**       In this case, the record contains overwhelming evidence that Holle's conduct was motivated by a sexual interest. At trial, the state played a video recording of Holle's interview with a detective, in which Holle described the two incidents for which he was

convicted. In the first, Holle denied M.H. had "ever ask[ed him] about humping" but conceded he had "showed her." He then described "play acting" with M.H. on a day shortly after Christmas, wherein M.H. was on his bed, she pulled down her pants, and he "rubbed up against her" buttocks two or three times with his covered penis. During the second incident, M.H. ran into his room naked, Holle grabbed her and threw her up in the air, then kissed her on her belly, two inches below her navel, and chest, specifically "on the side of her breast." When asked why he had acted this way with M.H. and not another child, he explained, "She's wanting to be with . . . a male." Although Holle denied being aroused and, at trial, his relatives testified that he had never displayed any sexual interest in M.H., there is no rational explanation for Holle's conduct other than he was motivated by sexual interest. *See id.* Therefore, we conclude the error did not contribute to the guilty verdicts. *See Davolt*, 207 Ariz. 191, ¶ 39, 84 P.3d at 470.

## Disposition

¶32 For the foregoing reasons, we affirm Holle's convictions and sentences.